THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:14-cr-00024-MR-WCM-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JONATHAN MICHAEL WHISNANT, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on Defendant's Pro Se Motion to Modify Defendant's Remaining Supervised Release Term [Doc. 31].

I.   **BACKGROUND**

On June 4, 2014, Defendant pled guilty to one count of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one count of knowingly possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  [Doc. 15].  On February 12, 2015, the undersigned sentenced Defendant to a total term of 78 months' imprisonment followed by a life term of supervised release.  [Docs. 29; 30].  Defendant commenced his term of supervision on August 9, 2019.  [See Docs. 31 at 2-3; 34 at 2].

Defendant now moves the Court to exercise its discretion and terminate his supervised release.  [Doc. 31].  In support of his motion,

Defendant argues that since beginning supervision he has been free of violations, has "completed all psychological and psychosexual evaluations[,]" "and completed all required treatment." [Id. at 3]. He further contends that he "pose[s] almost no risk to re-offend"; that he has "maintained permanent, gainful employment while" on supervision; that he has passed "all required polygraph examinations"; that he has the support of his family; that the goals of supervision "are now complete"; that early termination of supervision "serv[es] the interests of justice"; and that early termination is necessary to avoid unwarranted sentence disparities. [Id. at 4-19].

The Government opposes Defendant's motion. [Doc. 34]. It contends that early termination is not in the interest of justice; that Defendant has not yet completed five years of supervision; that his "circumstances are not of an 'unusual or extraordinary nature'"; and that Defendant's history and characteristics, the nature and circumstances of his offenses, the need to protect the public, and the need to avoid unwarranted sentence disparities all counsel against early termination. [Id. at 3]. The Probation Office has also advised the Court that it opposes Defendant's motion. [Doc. 32].

## II. STANDARD OF REVIEW

Section 3583(e) of Title 18, United States Code, provides, in pertinent part, as follows:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice[.]

18 U.S.C. § 3583(e)(1). Pursuant to Section 3583(e), the following factors are to be considered: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence to criminal conduct; the need for the sentence imposed to protect the public from further crimes of the defendant; the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

3

conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). After considering the relevant factors, in order to terminate supervision, the Court "must conclude that the early termination of supervised release is warranted both by the individual's conduct and also by the interest of justice[.]" United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999).

## III. DISCUSSION

### A. Offense Conduct / History and Characteristics

Defendant pled guilty to one count of knowingly receiving child pornography and one count of knowingly possessing child pornography after law enforcement recovered 18 images and 5 videos of child pornography from the devices that they seized from Defendant in January of 2014. [See Doc. 26 at 6]. These materials depicted female children described as being from 7 to 14 years in age performing various sex acts. [Id. at 7]. Defendant's involvement with this child pornography was "serious [and] deserving [of] serious sanctions" in and of itself. United States v. Morace, 594 F.3d 340, 350 (4th Cir. 2010) (quoting United States v. Hecht, 470 F.3d 177, 182 (4th Cir. 2006)).

However, the two counts to which Defendant pled guilty do not fully, nor fairly, illuminate the extent of Defendant's engagement with child pornography. Indeed, Defendant admitted to law enforcement that he became "involved in the posting and possession of child pornography" in 2001—*over a decade prior to his arrest*. [Doc. 26 at 5]. During this 13-year period, Defendant admitted that he used international photo sharing websites to post child pornography for others to download; that he posted comments requesting that others send child pornography to his linked email addresses; and that, in response to these requests, others sent him links to digital drop boxes containing child pornography, which he viewed "from time to time."[1] [Id. at 5-8]. Thus, Defendant not only has an extensive 13-year history of viewing and possessing child pornography, but he has a history of making it available for others to view and of encouraging its production and broader dissemination.

Additionally, Defendant's conduct demonstrates that he realized his involvement with child pornography was inappropriate *prior* to his arrest, yet he persisted in viewing and possessing this material. For instance, Defendant actively worked to conceal his actions, as he "accessed child

---

[1] Defendant even admitted that he impersonated his 14-year-old stepdaughter and utilized some of her online accounts to obtain child pornography. [Doc. 26 at 6].

5

pornography . . . when his family was asleep at night" and specifically indicated to law enforcement that "he use[d] deletion software approximately weekly to regularly wipe [child pornography] from his hard drive."[2] [Id. at 6, 8]. He also informed law enforcement that he intermittently tried to quit viewing child pornography during the 13-year period prior to his arrest. [Id. at 5]. However, at the time of his arrest, he admitted to having viewed child pornography during the preceding week. [Id. at 8].

In sum, the nature of Defendant's offense conduct weighs against terminating his supervised release early—particularly given the lengthy period over which he consumed child pornography, the fact that he made child pornography available for broader dissemination, and the lengths that he went to to obtain child pornography, including impersonating his minor stepdaughter. Similarly, because Defendant continued obtaining and viewing child pornography after realizing that doing so was inappropriate, and because he tried to conceal his consumption, the Court concludes that his characteristics also weigh against early termination.

---

[2] The Defendant was held responsible for a relatively low number of images. [Id. at 8, 10]. This was because the Defendant would regularly purge his computer of offending material. As such, it would appear that Defendant's offense conduct was actually worse than what is reflected in his PSR, but the extent of that conduct could not be ascertained because of Defendant's efforts at concealment.

## B. Defendant's Conduct While On Supervised Release

Defendant argues that he has adjusted exceptionally well to supervised release. [See generally Doc. 31]. Indeed, he contends that since beginning supervision he has not violated the terms of his release, that he has participated in all "psychological and psychosexual evaluations as directed by the Probation office, and [has] completed all required treatment." [Id. at 3]. He also contends that since beginning supervision he has maintained gainful employment, that he continues to enjoy the support of his family, and that he has passed polygraphs. [Id. at 4, 11-12]. However, "full compliance with the terms of supervised release [is not a] sufficient bas[i]s to warrant early termination." United States v. Farris, No. 5:14-CR-0008, 2021 WL 1588972, at *2 (W.D. Va. Apr. 22, 2021) (citing United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997) (collecting cases)).

The terms of Defendant's supervised release explicitly require him to "work regularly at a lawful occupation[,]" to "submit to a psycho-sexual evaluation" and to "complete the treatment recommendations . . . of the program[,]" to "submit to a mental health evaluation and/or treatment program[,]" and to "submit . . . to a polygraph examination." [See Doc. 29 at 3-4]. Defendant *must* meet these minimum requirements to maintain his freedom. Thus, while Defendant's efforts to comply with these requirements

7

are positive developments, they do not warrant early termination of supervision. Rather, "Defendant's compliance with the full terms of supervised release was what this Court expected when imposing a sentence, and as such, [it] cannot afford significant weight to Defendant having done what he is required to do to maintain his freedom." United States v. Zilevu, No. 1:19-cr-356 (RDA), 2024 WL 287698, at *3 (E.D. Va. Jan. 25, 2024). Similarly, maintaining "close family relationships . . . do[es] not *ipso facto* justify early termination." Id. Therefore, Defendant's conduct while on supervised release neither weighs in favor, nor against, early termination.

### C. Risk of Recidivism / Need to Protect the Public

Defendant next argues that he poses a near zero risk of reoffending. [Doc. 31 at 8-11]. More specifically, while he concedes that the Supreme Court has concluded that "[t]he risk of recidivism posed by sex offenders is 'frightening and high,'" Smith v. Doe, 538 U.S. 84, 103 (2003) (quoting McKune v. Lile, 536 U.S. 24, 34 (2002)), he argues that during the twenty-years since this decision that district courts and academic studies have started to recognize that this maxim sweeps too broadly. [See Doc. 31 at 8].

Defendant contends that recent studies have concluded that non-production child pornography offenders, such as himself, demonstrate lower

8

recidivism rates as compared to production child-pornography offenders, other categories of sex offenders, and other federal offenders. [Id. at 8-9]. He also argues that some of these studies suggest that sex offenders who reoffend tend to do so within their first year of supervision, and that he poses a particularly low risk of recidivism because he is over 50 years old and is college educated. [Id. at 9-11].

However, even if Defendant could somehow prove this to be *generally* true, "the question of whether a *particular* sex offender will reoffend requires more than a consideration of general statistics about the mine-run of sex offenders." United States v. Vandivere, 88 F.4th 481, 494 (4th Cir. 2023) (emphasis added); United States v. Wooden, 693 F.3d 440, 447 n.2 (4th Cir. 2012). "Instead, district courts are tasked with considering the personal proclivities of each offender and what these idiosyncrasies might indicate about his risk of reoffending." Vandivere, 88 F.4th at 494.

Defendant relies entirely on the studies discussed above to support his argument that he poses a low risk of recidivism. These studies, however, do nothing to assess Defendant's *personal* risk of reoffending. Indeed, they are not particularized to him in any way. As such, they are a wholly insufficient basis for concluding that Defendant poses a low risk of recidivism.

9

To the contrary, there are at least four different indicators, here, that suggest Defendant poses a *significant* risk of reoffending. First, Defendant's consumption of child pornography spanned a lengthy 13-year period. See United States v. Blackledge, 714 F. App'x 247, 249 (4th Cir. 2018) (discussing an expert's opinion that a defendant's "life-long history of sexual preoccupation with children" suggested that he "would have serious difficulty refraining from engaging in sexual activity with children"). Second, during this 13-year period, Defendant "masturbated to child pornography" excessively, "as much as two to three times per day[,]" because he found it "sexually gratifying" and it gave him a sense of "relief." See United States v. Perez, 752 F.3d 398, 409 (4th Cir. 2014) (noting that "persistence of sexual offending" and "deviant sexual interests" both indicate increased recidivism risks); [see also Doc. 26 at 8]. Third, while consuming child pornography at this alarming rate, Defendant also "engaged in high-risk behavior" by almost exclusively seeking and maintaining employment in schools, giving him close access to children. See Wooden, 693 F.3d at 462 (discussing that a defendant's "engage[ment] in high-risk behavior by being alone with children" indicated an increased likelihood that he would reoffend); [see also Doc. 26 at 14]. Fourth, Defendant admitted preferring "young pre-pubescent female child pornography." See United States v. Stokes, No. 5:18-HC-2181-

FL, 2021 WL 9978996, at *9 (E.D.N.C. Dec. 15, 2021) ("sexual preference for children . . . is a dynamic risk factor that increases respondent's risk of reoffense."); [see also Doc. 26 at 7].[3]

In sum, several specific factors indicate that Defendant poses an increased risk of recidivism. Thus, this factor weighs against terminating supervised release. Moreover, because Defendant poses an increased risk of reoffending, the need to protect the public from recidivism also counsels against terminating his supervision.

### D. Interest of Justice / Goals of Supervised Release

The "interest of justice" provision of 18 U.S.C. § 3583(e) gives "the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period." Pregent, 190 F.3d at 283.

Defendant specifically argues that the following policy statement from the United States Judicial Conference, which "provide[s] probation officers with a framework for when it is appropriate to *recommend* early termination of supervised release[,]" United States v. Rosenbaum, 643 F. Supp. 3d 602,

---

[3] Couched within his argument regarding the studies, Defendant does make note that he is over fifty years old. Age may indicate a decreased risk of recidivism. See Wooden, 693 F.3d at 462. However, this factor is outweighed by those discussed above.

11

603 n.2 (W.D. Va. 2022) (citation omitted), suggests that early termination would serve the interest of justice:

> [T]here is a presumption in favor of recommending early termination of supervised release for individuals who have been on supervision for at least 18 months and meet the following criteria:
>
> 1. The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) **or has not committed a sex offense** or engaged in terrorism.
>
> 2. The person presents no identified risk of harm to the public or victims.
>
> 3. The person is free from any court-reported violations over a 12-month period.
>
> 4. The person demonstrates the ability to lawfully self-manage beyond the period of supervision.
>
> 5. The person is in substantial compliance with all conditions of supervision.
>
> 6. The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

Guide to Judicial Policy, Vol. 8, Part E, § 360.20(c) (emphasis added).

Defendant concedes that he does not meet the letter of this policy statement, as he has committed a sex offense, but he argues that he "easily" meets the other criteria of the statement and that this "deserves its own consideration[.]" [Doc. 31 at 15]. However, the statement plainly requires

that a defendant meet *every* factor to obtain the presumption. In fact, the Judicial Conference statement places the Defendant in a category of offenders for whom the other five factors do not apply. Thus, the statement weighs against early termination in this case, as the Judicial Conference *expressly* decided to exclude sex offenders from receiving its benefit.

Moreover, even if the Court could consider the factors in the statement piecemeal, as Defendant encourages, as explained thoroughly above, Defendant poses an increased risk of recidivism. Therefore, the second factor plainly weighs against early termination of his supervised release because such termination would create a risk of harm to the public. Moreover, while Defendant might meet the third, fourth, and fifth factors, as explained above, Defendant's compliance with the terms of his supervised release does not merit early termination.[4]

Defendant further argues that the fifth application note to U.S.S.G. § 5D1.2, which provides that "the Court may wish to consider early termination of supervised release if the defendant is an abuser of narcotics, other

---

[4] Defendant has not submitted sufficient evidence for the Court to analyze the sixth factor. While he states that he enjoys good relations with his "fantastic extended family," he has submitted no evidence to support these statements. [Doc. 31 at 4]. Additionally, Defendant apparently enjoyed good relations with his family, who were "shocked" to learn of his conduct, prior to his arrest. [See Doc. 26 at 12-13]. Thus, it is unclear how his current familial relationships meaningfully differ from those he had at the time he was offending.

13

controlled substances, or alcohol who, while on supervised release, successfully completes a treatment program," suggests that termination of his supervised release would be in the interest of justice. [See Doc. 31 at 14]. However, while Defendant indicates that he has complied with psychosexual treatment while on supervised release, he has not provided any evidence that treating a substance addiction is equivalent to treating sexual deviance. Indeed, Defendant has not provided *any* specific information about the treatment he has received, nor established that his treatment has sufficiently decreased his recidivism risks such that early termination would serve the interest of justice.

To the contrary, the sentencing guidelines expressly recommend that the maximum statutory term of supervised release—a life term—be imposed for Defendant's specific offenses. See U.S.S.G. § 5D1.2(b); see also United States v. Helton, 782 F.3d 148, 154 (4th Cir. 2015) ("[T]he U.S. Sentencing Commission specifically included an advisory policy statement in the Guidelines Manual that suggests it is the judgment of the Sentencing Commission that in the case of sex offenses 'the statutory maximum term of supervised release is recommended.'"); Morace, 594 F.3d at 351 ("Read together with § 3583(k), the § 5D1.2(b) policy statement reflects the judgment of Congress and the Sentencing Commission that a lifetime term

14

of supervised release is appropriate for sex offenders in order to protect the public.") (internal quotations and citations omitted). Defendant has offered no circumstances suggesting that this recommendation should not apply in his case.

Relatedly, supervision serves several important functions. "Key among these are protection of the public, and rehabilitation of the defendant." United States v. Hamilton, 986 F.3d 413, 418 (4th Cir. 2021) (internal citation omitted). "Supervised release is not a punishment . . . ." United States v. Buchanan, 638 F.3d 448, 451 (4th Cir. 2011). Rather, it serves the critical function of connecting a defendant to resources, such as trainings and treatments, and ensures some level of monitoring that can be essential to helping a defendant avoid falling back into inappropriate behavior. See Johnson v. United States, 529 U.S. 694, 709 (2000).

As Defendant argues, he has performed well while on supervised release. Indeed, the services and treatments he has been connected to, and has engaged with, seem to be helping him make positive strides. However, Defendant has not yet completed even the mandatory five-year minimum term of supervised release that the Court could have imposed in conjunction with his offenses. Thus, keeping Defendant connected to the services that have allowed him to improve his life continues to be in the interest of justice.

15

Moreover, it is both in the public's best interest—and in Defendant's best interest—to keep him connected to the monitoring that supervised release provides, to ensure that he does not relapse into harmful behavior.

Therefore, having considered the goals of supervised release, the nature of Defendant's offenses, his characteristics, the risk he poses of recidivism, and his behavior while on supervised release, the Court concludes that the interest of justice is best served by Defendant's continued supervision.

### E. Sentencing Disparities

In fashioning a defendant's sentence, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). Defendant contends that his life term of supervised release has resulted in an unwarranted sentence disparity because courts have become more willing to terminate sex offenders' supervised release early in recent years, and because "defendants sentenced in 2022 who match [his] specific demographic data . . . were given a median supervised release sentence of 120 months." [Doc. 31 at 16-18].

As a primary matter, the factor takes account of *specific* sentences for *specific* offenses—not generalized trends in the rate at which motions to

16

terminate supervised release early are granted. Additionally, "consistent with the Sentencing Commission's policy statement, child sex offenders are often sentenced to lifetime supervised release following prison." Smith v. United States, No. 2:16-CR-51, 2023 WL 8586680, at *7 (E.D. Va. Dec. 11, 2023); see also United States v. McMiller, 954 F.3d 670, 673 (4th Cir. 2020); United States v. Arbaugh, 951 F.3d 167, 177-78 (4th Cir. 2020); Helton, 782 F.3d at 150; United States v. Kelson, 715 F. App'x 235, 236-37 (4th Cir. 2017); United States v. Stevens, No. MJG-12-0136, 2018 WL 835717, at *2 (D. Md. Feb. 13, 2018).

Thus, Defendant has not demonstrated that his life term of supervised release has resulted in a sentence disparity. Moreover, given the nature of Defendant's offenses, his history and characteristics, the risks he poses of reoffending, the need to protect the public, and the interest of justice, the Court concludes that lifetime supervision is warranted in this case.

The purpose of supervised release is two-fold: 1) to assist in the rehabilitation of one who has completed a term of imprisonment by providing access to various rehabilitative services, and 2) to supervise and regulate the behaviors of such releasee. The Sentencing Guidelines suggest a life term of supervised release for offenders such as the Defendant largely in view of the second factor. It is understood that those who exhibit sexual

desires directed at children over a long period present a long-term risk of falling back into behaviors consistent with such interest. Defendant's offense conduct spanned at least 13 years. Moreover, it involved more than an interest in any lewd or lascivious display by children, but rather drew enjoyment from the actual sexual abuse of children. To terminate Defendant's supervision when he has not yet even reached the bare statutory minimum term of supervised release for any sex offender (much less for one with such aggravating factors) is simply not warranted.

## IV. CONCLUSION

Having considered the § 3553(a) and § 3583(e) factors, Defendant's arguments, the respective positions of the Government and the Probation Office, the Court is not satisfied that termination is warranted under the circumstances at this time. The Court recognizes that the Defendant has made positive strides in his adherence to the conditions of his supervised release. However, his history and characteristics, as well as the nature and circumstances of his offenses, counsel against terminating supervised release, as does the need to protect the public from potential recidivism. Accordingly, for the reasons stated herein, the Court declines to exercise its discretion to terminate Defendant's supervised release.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Pro Se Motion to Modify Defendant's Remaining Supervised Release Term [Doc. 31] is hereby **DENIED.**

**IT IS SO ORDERED.**

Signed: April 8, 2024

Martin Reidinger
Chief United States District Judge